CIRCUIT COURT OF ARLINGTON COUNTY

Tenth District Committee
of the Virginia State Bar

v.

James R. Harris and
Edward C. Hall

August 27, 1971

Case No. (Chancery) 21063

By JUDGE ELLIOTT MARSHALL

This is a proceeding instituted by the complainant in conformity with Part IV, Sec. 13(d) of the Rules of Integration of the Bar.

The complainant contends that the defendants have violated Canons 35 and 47 of Sec. II (Canons of Professional Ethics) of Part 6 of the Rules for Integration of the Virginia Bar and Code Sec. 54-83.1:2, and should be reprimanded and enjoined from continuing such violations.

United Services Home Owners Association, Inc., was established by a Col. Webb for the purpose of providing an unusual service to the shifting populace of that portion of Northern Virginia near Washington with its various governmental offices and their constantly changing personnel.

With the aim of avoiding costly brokerage commissions, U.S.H.A. provides a means by which the homeowner and prospective purchaser may deal directly with each

other as to price and terms of sale, with U.S.H.A. listing the properties for sale and placing for sale signs (by owner) thereon, providing the written sales contract and conducting the settlement. A schedule of fees is established: Maximum: $300.00.

U.S.H.A. advertises: "Our organization provides the Homeowner with the professional and impartial advice, counseling and services necessary to consummate the sale and transfer of your property at a fraction of regular costs of a lesser service." (Italics supplied)

Again: "The Smart Way to Sell Your House."

## 5. OBTAIN GOOD COUNSELING

. . . mortgage placement or procurement; selection of settlement procedures and their specific charges; insurance requirements; in fact all of the information necessary to the execution of the sales agreement (contract) acceptable to and for the protection of both parties. Selection of U.S.H.A. to perform these complexities for you practically insures your ability to consummate the sale of your house. It places all necessary actions into one single package and in one responsible party resulting in a probable savings to you. Experience in procedure and knowledge of appropriate costs in connection with the closing, financing and transfer of property rests inherently in the personnel and services of U.S.H.A. (Italics supplied)

The stockholders of U.S.H.A. also own a title insurance company with which it shares offices and personnel.

When the seller and purchaser have agreed on price and terms they come to the offices of U.S.H.A. which prepares a contract for their execution and discusses with them the details of the transfer including the necessity for title insurance and the length

of title search. As is customary with real estate brokers, U.S.H.A. represents both seller and buyer.

The contract provides:

> Examination of title, tax certificate, conveyancing, notary fees and all recording charges, including those for purchase money trust, if any, are to be at the cost of the purchaser _who hereby authorizes United Services to order the examination of title_ . . . (Italics Supplied)

The contract is then sent to attorneys chosen by U.S.H.A. (the defendants, Harris & Hall, in about 90 percent of the cases) who examine title and prepare all papers necessary for transfer and settlement. The parties are then notified to present themselves at the offices of U.S.H.A. for settlement. All papers contain the name of Harris & Hall but they are not present at settlement. The purchaser makes check payable to Harris & Hall who record the deed, deed of trust, etc., and disburse the money according to the settlement sheet, which contains statement of the various fees payable to Harris & Hall.

Ordinarily neither the seller nor purchaser ever sees Harris & Hall. U.S.H.A., as advertised, gives "counseling" as to the meaning of general warranty, English Covenants, homestead exemption, and the like, and advises the seller as to his continued liability in the event of mortgage assumption by the purchaser, etc. There is no lawyer present at the settlement, which, for convenience of the parties, is usually held after business hours or on Sunday when lawyers are playing golf or otherwise engaged, but the personnel of U.S.H.A. are knowledgeable and experienced in all matters pertaining to real estate transfer, assumption of liens, etc.

Harris & Hall own no stock in U.S.H.A. or the title company.

Ordinarily neither the seller nor purchaser chooses an attorney, although perfectly at liberty to do so. Where the purchaser does not designate an attorney he is told that Harris and Hall or some other named attorney would do the necessary work.

## CANON 35

There should be no "intermediaries" between lawyer and client.

> (In Part) The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer. (Can. 35)

The practice of "Real Estate" law has come a long, long way from the time when John Doe set out to sell and convey Blackacre to Richard Roe. If there were a real estate broker involved all he could do was to obtain a buyer willing and able to purchase at a price and upon terms agreeable to the seller, or to produce a willing seller. The broker could not write a contract for this was practicing law. Then the seller and buyer would each retain his attorney, and the attorneys would join in the preparation of the contract which obviously would protect the interests of both clients. The attorney for the purchaser would then examine and certify the title and prepare the mortgage papers. The seller's attorney would prepare the deed. At the time of settlement each attorney would scrutinize the papers of the other to safeguard the interests of his client.

This procedure was ideal, but it often entailed delays and considerable expense.

Since Comm. v. Jones & Robins, Inc., 186 Va. 30, brokers in Virginia customarily prepare the sales contracts, a practice condemned by the standing committee on Unauthorized Practice of the Law of the American Bar Association (Am. Bar Assn. Journal, April 1940, Vol. 26, No. 4 at p. 340). But brokers may not

prepare deeds or other title papers. Jones & Robins, supra.

The brokers also recommend an attorney or firm to handle the transfers and settlements for both parties. This, we are told, is because few laymen in urban areas are acquainted with any attorneys and the brokers, experienced in such matters, know the attorneys who specialize in "real estate law" and are in a position to give prompt and efficient service at a "reasonable" price.

In the opinion of the Legal Ethics Committee, approved by the Virginia State Bar on December 9, 1940, Opinions p. 218-220, it is not improper for a broker to recommend to his customer the employment of some particular attorney but it is improper for the attorney to act upon the request or instructions of the broker. "Such employment, and the performance of the services, should be accomplished by direct negotiations between the attorney and the party to whom he is responsible. . ." (Italics Supplied) p. 218.

There can be no doubt that under the facts of this case Canon 35 has been violated. The personal and confidential relationship of lawyer and client has been totally abandoned when the attorney and client never meet each other.

While in a strict sense an "intermediary" is the agent of both parties I think that the language of Canon 35: (in part) "A lawyer's relation to his client should be personal, and the responsibility should be direct to the client"; clearly forbids the procedure divulged by the evidence for retaining Harris & Hall.

It is urged that examination of title, preparation of deeds and other title papers and settlement sheets have become so stereotyped and perfunctory that the necessity for personal relationship between lawyer and client has become unnecessary.

It is true that today many deeds and other title papers are drawn on printed forms, the scrivener

merely filling in the blanks, as was observed by Holt J. in his dissent in <u>Jones & Robins</u>, but this does not mean that the preparation thereof does not require expert legal knowledge and constitute practice of the law. Even Judge Holt agrees to this but urges that the brokers should be allowed to practice law to that extent if it is done ". . . incident to the regular course of conducting a licensed business." (Rules of Court, 171 Va. XVII(3)).

It is further urged that many lawyers in Northern Virginia practicing "Real Estate Law" never see their clients, their services being ordered by banks, real estate brokers, contractors, land subdividers and others.

The answer is that if such services constitute practice of the law Canon 35 should apply. It could scarcely be logically contended that Canon 35 should apply to all practice other than "Real Estate Law."

If the practice is to be countenanced either the definition of practice of law or the Canon should be changed to fit the circumstances.

## CANON 47

The complainant contends that Harris & Hall "aided" U.S.H.A. in the unauthorized practice of the law.

The alleged unauthorized practice consists of advising the customers of U.S.H.A. as to the necessity for title examinations, giving advice as to the import and effect of the various title papers, and "holding" the settlement.

As we have seen, U.S.H.A. advertises that the problems of financing and transfer of title at reasonable costs should be entrusted to it because of its experience and knowledgeability. The purchaser in the contract authorizes U.S.H.A. to order examination of title. The whole tenor of the advertising matter is designed to leave the customers under the impression

that U.S.H.A. should be given <u>carte</u> <u>blanche</u> authority to conduct all procedures, whether legal or otherwise, because of its expertise. While there is nothing in the advertisement to forbid or dissuade the customers from obtaining the services of attorneys of their choices, laymen inexperienced in such matters might well be misled into the belief that U.S.H.A., itself, is supplying all necessary legal services and that Harris & Hall are merely associates or employees of U.S.H.A.

In considering the advice given the U.S.H.A. customers in the light of the advertising, I am of the opinion that U.S.H.A. is trespassing upon the lawyer's prerogative by the practice of law and that Harris & Hall are countenancing such practice to the extent that they are in violation of Canon 47.

## Code Sec. 54-84.1:2

While a jury might not find Harris & Hall guilty of solicitation under this criminal statute, and there is no evidence that U.S.H.A. expressly "solicits" practice for Harris & Hall in the ordinary sense of the word, the facts that about 90 percent of U.S.H.A.'s business goes to Harris & Hall and that this amounts to a considerable practice for Harris & Hall give rise to the conclusion that the chain of circumstances surrounding the whole transaction between U.S.H.A. and its customers result in creating law practice for Harris & Hall.

However, if U.S.H.A. would alter some of the language of its advertising so as to leave no one under the impression that it is supplying legal advice and services and would only recommend that the customers consult Harris & Hall when requested, this would obviate the necessity for deciding this issue and, as I intend to issue an injunction against continuance of the aforementioned violation of Canons 35 and 47, I find it unnecessary to decide as to whether the statute is being violated.

## SUMMARY

I will enter a decree enjoining Harris & Hall from accepting employment from any of the customers of U.S.H.A. unless such customers personally retain their services.

I will also enjoin Harris & Hall from aiding U.S.H.A. in the unauthorized practice of law.

I will reprimand Harris & Hall for their activities in this respect.